STATE OF NORTH CAROLINA v. THOMAS CURIE

No. 7312SC539

(Filed 25 July 1973)

Criminal Law §§ 2, 5— evidence of previous psychiatric problems — exclusion as harmless error

In a prosecution for secret assault, assault with a firearm with intent to kill and first degree burglary, defendant was not prejudiced by error, if any, in the exclusion of defendant's testimony as to prior psychiatric problems offered for the purpose of showing absence of specific intent to commit the crimes charged where the jury returned verdicts of guilty of the lesser crimes of assault with a deadly weapon inflicting serious injury, assault with a deadly weapon and wrongful breaking and entering, since intent is not an element of either of the offenses of which defendant was found guilty.

APPEAL by defendant from Braswell, Judge, 5 March 1973 Session of CUMBERLAND Superior Court.

Upon pleas of not guilty defendant was tried on bills of indictment, proper in form, charging the following: (1) secret assault on Deputy Sheriff Frank Goggio; (2) first-degree burglary; (3) assault with a firearm with intent to kill Daniel Daly; and (4) assault with a firearm with intent to kill Richard McKee. All offenses allegedly occurred on 9 October 1972.

Evidence for the State, briefly summarized, tended to show:

On 9 October 1972 Mrs. Wilma McKee and four of her children—three sons, ages 17, 13 and 10, and a daughter, age 12—resided at 606 Farrington Street in Cumberland County. On that afternoon Mrs. McKee left her home to go to work at approximately 4:30, leaving the children under the care of her friend, Sgt. Daniel Daly. Defendant and his wife lived across the street from the McKees and the two families were on friendly terms.

Around 9:00 p.m., as Daly (who did not know defendant) and two of the McKee children were watching television, defendant, dressed only in his underwear and armed with a .22 rifle, went to the front door of the McKee home and began smashing the screen door. Daly rushed to the door, slammed the main door shut, and placed his body against it. Defendant then smashed a window adjacent to the door, stuck the rifle through the opening and fired at Daly, telling Daly to back away from the door. Daly did as ordered, telling the children to go to the back part of the house. Defendant smashed the main door, entered the house, and ordered Daly and one of the McKee boys to lie on the floor; during that time defendant was saying something about "cops" being after him.

For several minutes defendant terrorized occupants of the McKee home, firing the rifle at or near Daly and Richard McKee twice. Defendant's wife came to the front door and begged defendant to go home. Finally, Daly "jumped" defendant and wrestled him while the McKee children escaped from the house; eventually Daly escaped, went to a nearby house and called police. Defendant removed a shotgun from the McKee home, concealed himself in the yard and when police arrived fired the gun at Deputy Sheriff Goggio. Four gunshot pellets struck Goggio in his head, knocking him down. Thereafter, by the use of tear gas and other means police succeeded in arresting defendant. Defendant stated later, "I shot a pig."

Testifying in his own behalf, defendant stated: The McKees were his friends but on the day in question he began drinking beer around 11:00 a.m. and proceeded to consume large quantities of beer throughout the day and early evening. He did not intend to go to the McKee home, had no intent to hurt anyone, and has only a vague recollection of the occurrences at the McKee home. "All these events seemed to me not to be reality but more like a dream."

For their verdicts, the jury found defendant guilty of assault with a deadly weapon inflicting serious injury on Goggio, nonfelonious breaking and entering, assault with a deadly weapon on Daly, and assault with a deadly weapon on Richard McKee. From judgments imposing active prison sentences, defendant appealed.

*Attorney General Robert Morgan by Emerson D. Wall, Associate Attorney, for the State.*

*Sol G. Cherry, Public Defender Twelfth Judicial District, for defendant appellant.*

BRITT, Judge.

The only assignment of error brought forward and argued by defendant relates to the failure of the court to allow defendant to testify with respect to his mental and psychiatric problems. After hearing the proffered testimony on voir dire in the absence of the jury, the court ruled it inadmissible.

Pertinent portions of the excluded testimony are summarized as follows: Following his arrest, defendant was sent to Dorothea Dix Hospital for observation but he would not cooperate with the doctors there because they had long hair, were "weirdos," and he had no confidence in them. Efforts by defendant and his counsel to get the psychiatrist at Ft. Bragg to examine and evaluate defendant failed. In 1964 defendant was treated by a psychiatrist in Michigan and some two or three years prior to the trial, defendant received a head injury. When committing the acts complained of, defendant was aware of where he was and vaguely aware of what he was doing, but it did not seem real.

Defendant's counsel advised the trial court that defendant was not pleading temporary insanity as he had no evidence to support that plea. Counsel argued to the trial court, and argues

here, that the issue is not one of insanity but whether "evidence of prior psychiatric problems, which may have been caused in part by a blow to the head of the defendant-witness, [is] competent for the purpose of showing lack of specific intent to commit the offenses of which this defendant was convicted." Under the facts in this case we hold that the court did not commit prejudicial error in excluding the testimony.

In 2 Strong, N. C. Index 2d, Criminal Law, § 2, p. 482, we find: "Where a statute specifically forbids a particular act, the commission of the forbidden act is the offense, regardless of intent."

In *State v. Hales,* 256 N.C. 27, 122 S.E. 2d 768, 90 A.L.R. 2d 804 (1961), in an opinion by Justice (later Chief Justice) Parker, we find: "It is within the power of the Legislature to declare an act criminal irrespective of the intent of the doer of the act. The doing of the act expressly inhibited by the statute constitutes the crime. Whether a criminal intent is a necessary element of a statutory offense is a matter of construction to be determined from the language of the statute in view of its manifest purpose and design. (Citations.)"

In *State v. Lattimore,* 201 N.C. 32, 158 S.E. 741 (1931), the court said: "It is true that an act may become criminal only by reason of the intent with which it is done, but the performance of an act which is expressly forbidden by statute may constitute an offense in itself without regard to the question of intent."

Intent is a prescribed element of the four offenses with which defendant was charged, namely, secret assault (G.S. 14-31), two cases of assault with firearm with intent to kill (G.S. 14-32[c]), and first-degree burglary *(State v. Gaston,* 4 N.C. App. 575, 167 S.E. 2d 510 [1969]). Intent is not an element of either of the statutory offenses of which defendant was found guilty, namely, assault with a deadly weapon inflicting serious injury (G.S. 14-32[b]), two cases of assault with a deadly weapon (G.S. 14-33[c][2]), and wrongful breaking and entering (G.S. 14-54[b]). Assuming, *arguendo,* that defendant was entitled to the benefit of any part of the excluded testimony on the four offenses with which he was charged, in view of the verdicts returned, we perceive no prejudice.

McCraw v. Bancorp, Inc.

We hold that defendant received a fair trial, free from prejudicial error, and the sentences imposed are within the limits prescribed by statute.

No error.

Judges CAMPBELL and BALEY concur.